# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

ALLIED PROPERTY & CASUALTY INSURANCE COMPANY, a Foreign Corporation

   Plaintiff,         CASE NO.:

vs.

C.C. BORDEN CONSTRUCTION, INC., a Florida Corporation, DUVAL GLASS & MIRROR, INC., a Florida Corporation, MELISSA PERRY, an individual, DENNIS LASHBROOK, an individual, ELIZABETH CONRAD, an individual, INA FITZPATRICK, an individual, JANET COWAN, an individual, LAINIE RITTENOUR, an individual, MADELEINE MILNE, an individual, LAURA PAZARENA, an individual, MARILENN PUNSALAN, an individual, SHANNON SANDBERG, an individual, and MICHELE BAGNOLI, an individual

   Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to 28 U.S.C. § 2201, *et seq.* and Federal Rule of Civil Procedure 57, the Plaintiff, Allied Property & Casualty Insurance Company ("Allied"), files this Complaint for Declaratory Judgment against the Defendants, C.C. Borden Construction, Inc. ("CC Borden"), Duval Glass & Mirror, Inc. ("Duval Glass"), as well as Melissa

1051605\310970075.v3

Perry, Dennis Lashbrook, Elizabeth Conrad, Ina Fitzpatrick, Janet Cowan, Lainie Rittentour, Madeleine Milne, Laura Pazarena, Marilenn Punsalan, Shannon Sandberg, and Michele Bagnoli (collectively, the "Claimants"), and states as follows:

## PRELIMINARY STATEMENT

1.     This declaratory judgment action is brought for the purpose of determining an actual controversy between the parties with respect to three Commercial Insurance Package policies providing commercial general liability and umbrella coverage, issued by Allied to its named insured, Duval Glass.

2.     Allied seeks a judgment declaring that it has no duty to defend CC Borden, a purported additional insured under Duval Glass's policies of insurance, for a lawsuit filed by the Claimants, as described more fully below.

## JURISDICTION & VENUE

3.     Allied is, and was at all times material hereto, a foreign corporation incorporated in the State of Iowa, domiciled in and with its principal place of business in the State of Ohio.

4.     CC Borden is, and was at all material times, a Florida Corporation domiciled in Florida and with its principal place of business in Florida, doing business in Flagler County, Florida.

5.     Duval Glass is, and was at all material times, a Florida Corporation domiciled in Florida and with its principal place of business in Florida, doing business in Flagler County, Florida.

1051605\310970075.v3

6.     Melissa Perry is, and was at all material times, a resident of Flagler County, Florida domiciled in Flagler County, Florida.

7.     Dennis Lashbrook is, and was at all material times, a resident of Flagler County, Florida domiciled in Flagler County, Florida.

8.     Elizabeth Conrad is, and was at all material times, a resident of Flagler County, Florida domiciled in Flagler County, Florida.

9.     Ina Fitzpatrick is, and was at all material times, a resident of Flagler County, Florida domiciled in Flagler County, Florida.

10.    Janet Cowan was previously, a resident of Flagler County, Florida and is currently domiciled in Lexington, Davidson County, North Carolina.

11.    Lainie Rittentour is, and was at all material times, a resident of Flagler County, Florida domiciled in Flagler County, Florida.

12.    Madeleine Milne was previously, a resident of Flagler County, Florida and is currently domiciled in Port Orange, Volusia County, Florida.

13.    Laura Pazarena was previously, a resident of Flagler County, Florida and is currently domiciled in Zebulon, Wake County, North Carolina.

14.    Marilenn Punsalan is, and was at all material times, a resident of Flagler County, Florida domiciled in Flagler County, Florida.

15.    Shannon Sandberg is, and was at all material times, a resident of Flagler County, Florida domiciled in Flagler County, Florida.

16.    Michele Bagnoli is, and was at all material times, a resident of Flagler County, Florida domiciled in Flagler County, Florida.

1051605\310970075.v3

17.    Duval Glass is a proper party to this action, because rights under the policies issued to it will be impacted by the Court's declaration in this matter. Therefore, it has been named so that it will be bound by the Court's decision.

18.    The Claimants are proper parties to this action, because their rights of recovery will be impacted by the Court's declaration in this matter. Therefore, they have been named in this action so they will be bound by the Court's decision.

19.    Complete diversity of citizenship exists in this matter.

20.    As set forth herein, the amount in controversy exceeds $75,000.00, exclusive of costs, interest and attorneys' fees.

21.    Accordingly, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332.

22.    Venue is proper in the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. § 1391(b)(1), because the Claimants reside in Flagler County, CC Borden is domiciled in Duval County, and Duval Glass is domiciled in Duval County.

## FACTUAL ALLEGATIONS

### I.    The Underlying Liability Action

23.    On March 12, 2021, the Claimants filed a lawsuit in Flagler County, Florida, against CC Borden, as well as others (DJ Design Services, Inc. and TTV Architects, Inc.), in the case styled *Melissa Perry, et al. v. DJ Design Services, Inc., et al.*, No. 2021 CA 000131, in the Circuit Court for the Seventh Judicial Circuit in and for Flagler County, Florida (the "Underlying Action"). Each of the Claimants are seeking damages in excess of the jurisdictional amount.

4

24.     On August 20, 2021, the Claimants filed a Motion for Leave to Amend the Complaint attaching the Amended Complaint, and the Amended Complaint (the "Complaint") was deemed filed by the Agreed Unopposed Order on Plaintiff's Motion for Leave to Amend Complaint, itself entered on January 19, 2021. A copy of the Complaint is attached as **Exhibit A**.[1]

25.     The Complaint generally alleges that the Claimants were employed by the Flagler County Sheriff's Department working at the Flagler County Sheriff's Operations Center, located at 901 E. Moody Blvd., Bunnell, Florida (the "Operations Center").

26.     The Claimants allege that while working at the Operations Center, they began experiencing adverse health symptoms.

27.     Employees allegedly reported musty, mildew or stale odors in the Operations Center.

28.     Allegedly, investigations revealed the presence of hidden moisture and mold within the Operations Center, including wall cavities and under flooring.

29.     The Complaint generally alleges that, prior to its purchase by Flagler County, the Operation Center had served as a hospital, which had sat abandoned for roughly 10 years until the County began exploring the potential for purchasing the abandoned hospital in 2013 for the purpose of converting it into the Operations Center.

---

[1] For convenient review, **Exhibit A** is bates labelled ALLIED 000001 – ALLIED 000075.

30.    The County purchased the building in 2013 and renovated it into a law enforcement operations center "during an approximately nine month construction process."

31.    CC Borden allegedly served as a general contractor on the renovation project.

32.    The Claimants, each individually, allege a total of 36 counts against the various defendants, including CC Borden.

33.    Each individual claimant alleges a single count of negligence against CC Borden, alleging that it had a duty to the plaintiffs: that the Operations Center would be constructed in a reasonably safe manner; that it would not put others at undue risk of harm; that the Operations Center would be watertight; that it would investigate, correct, and remediate any mold issues; and that it would install the Heating, Ventilation and Air-Conditioning (HVAC) system, so that they would maintain proper indoor air quality through adequate ventilation and filtration.

34.    CC Borden allegedly negligently deviated from these duties.

35.    The Claimants each individually allege that "as a direct and proximate result of Defendant C.C. Borden Construction, Inc.'s acts and omissions, and breach of duties owed to [the individual claimant] through its negligent acts and omissions, [the individual claimant] suffered" various damages, including but not limited to bodily injury, personal injury, pain and suffering.

36.    Duval Glass is not identified in the Complaint.

37.    CC Borden is sued for its own allegedly negligent acts or omissions.

1051605\310970075.v3

II.    **The Policies**

38.    Allied issued three Commercial Package Policies to Duval Glass providing commercial general liability and commercial umbrella liability insurance: (1) ACP GLPO and CAP 3007247766, effective from August 1, 2015 to August 1, 2016; (2) ACP GLPO and CAP 3017247766, effective from August 1, 2016 to August 1, 2017; and (3) ACP GLPO and CAP 3027247766, effective from August 1, 2017 to August 1, 2018 (collectively, the "Policies").  Copies of the Policies are attached as **Exhibit B**.[2]

39.    The Policies general liability coverage provides, in pertinent part, the following insuring agreement:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION I.  COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **INSURING AGREEMENT**

   a.    We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

   …

---

[2] For convenient review, **Exhibit B** is bates labelled ALLIED 000076 – ALLIED 000398.

> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> ...
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period…
>
> * * *

**Exhibit B**, at ALLIED 000120; ALLIED 000228; and ALLIED 000334.

40.    The general liability coverage forms provide, in pertinent part, the following definitions:

> **V.    DEFINITIONS**
>
> * * *
>
> **3.    "Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> * * *
>
> **13.    "Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> * * *
>
> **16.    "Products-completed operations hazard"**:
>
> **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> **(1)**    Products that are still in your physical possession; or
>
> **(2)**    Work that has not yet been completed or abandoned …
>
> * * *

**Exhibit B**, at ALLIED 000132-134; ALLIED 000240-242; and ALLIED 000346-348.

1051605\310970075.v3

41.    The general liability coverage forms contain the "Fungi or Bacteria Exclusion" endorsement, form CG 21 67 12 04, which provides as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**    The following exclusion is added to **Paragraph 2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

**2.**    **Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a.    "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b.    Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

1051605\310970075.v3

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption

…

C.    The following definition is added to the **Definitions** Section:

"Fungi" means any type of form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

* * *

**Exhibit B**, at ALLIED 000148; ALLIED 000256; and ALLIED 000366.

42.    Policy number ACP GLPO and CAP 3007247766, effective August 2015 to August 2016, includes the "Blanket Additional Insured Endorsement Commercial Contractors Coverage" endorsement, form CG 72 46 09 08, which provides as follows:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BLANKET ADDITIONAL INSURED ENDORSEMENT
## COMMERCIAL CONTRACTORS COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.    **WHO IS AN INSURED ( Section II)** is amended to include as an insured any person or organization whom you are required to add as an additional insured on this policy under  a written contract or written agreement. The written contract or written agreement must be:

1.    Valid and legally enforceable;

2.    Currently in effect or becoming effective during the term of this policy; and

1051605\310970075.v3

3.      Executed prior to an "occurrence" resulting in "bodily injury", "property damage," or "personal and advertising injury."

**B.**      The insurance provided to the additional insured is further limited as follows:

1.      That person or organization is an additional insured solely for liability due to your negligence specifically resulting from "your work" for the additional insured which is the subject of the written contract or written agreement. No coverage applies for any liability due to negligence attributable to any person or entity other than the Named Insured.

2.      The Limits of Insurance applicable to the additional insured are those specified in the written contract or written agreement or in the Declarations of this policy, whichever is less. These Limits of Insurance are inclusive of, and not in addition, to the Limits of Insurance shown in the Declarations.

3.      If we insured the Named Insured for more than one annual policy period:

a.      Only the policy in effect at the time the "bodily injury", "property damage", or "personal and advertising injury" first occurs will apply;

b.      "Bodily injury", "property damage", or "personal and advertising injury", first occurs when it is initially discovered by any person;

c.      Any continuation, progression, change or resumption of "bodily injury", "property damage", or "personal and advertising injury will be deemed to be one occurrence;

d.      Our limit of liability will not exceed the Limits of Insurance for one annual policy period.

11

4.      The coverage provided to the additional insured by this endorsement and paragraph **f.** of the definition of "insured contract" under **DEFINITIONS (SECTION V)** do not apply to "bodily injury" or "property damage" arising out of the "products-completed operations hazard" unless required by the written contract or written agreement. When coverage does apply to "bodily injury" or "property damage" arising out of the "products-completed operations hazard" such coverage will not apply beyond the lesser of:

a.      The period of time required by the written contract or written agreement; or

b.      Five years from the completion of "your work" on the project which is the subject of the written contract or written agreement.

...

6.      We have no duty to defend or indemnify an additional insured under this endorsement:

a.      For any liability due to negligence attributable to any person or entity other than the Named Insured. This provision includes any sole negligence or willful misconduct on the part of the additional insured or its "employees".

b.      For any loss which occurs prior to our Named Insured commencing operations at the location of the loss.

c.      Until we receive written notice of a claim or "suit" form the additional insured as required in the **Duties In the Event of Occurrence, Offense, Claim or Suit Condition**.

* * *

**Exhibit B**, at ALLIED 000159-160.

43.    Policy number ACP GLPO and CAP 3017247766, effective August 2016 to August 2017, and policy number ACP GLPO and CAP 3027247766, effective August 2017 to August 2018, include the "Additional Insured – Owners, Lessees or Contractors – Automatic Status for Other Parties When Required In Written Construction Agreement", form CG 72 46 11 15, which provides as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS FOR OTHER PARTIES WHEN REQUIRED IN WRITTEN CONSTRUCTION AGREEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

...

**B.    Section II – Who Is An Insured** is amended to include as an additional insured:

**Products- Completed Operations**

**A**ny person or organization with whom you have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" performed for such person or organization and included in the "products-completed operations hazard".

However, the insurance afforded to such additional insured described above:

a.    Only applies to the extent permitted by law; and

b.    Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

13

…

**D.**    With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.**    Required by the contract or agreement described in Paragraph **A.1.** or Paragraph **B**.

**2.**    Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

\* \* \*

**Exhibit B**, at ALLIED 000267-268 and ALLIED 000379-380.

44.    The general liability coverage forms contain the "Endorsement – Two or More Coverage Forms or Policies Issued by Us" endorsement, form CG 70 33 (03-93), which provides as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT – TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following condition is added to SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS:

10.    **Two or More Coverage Forms or Policies Issued by Us.**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us

1051605\310970075.v3

apply to the same "occurrence," the aggregate maximum limit of insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**Exhibit B**, at ALLIED 000152; ALLIED 000260; and ALLIED 000371.

* * *

45.     The umbrella coverage form provides, in pertinent part, the following insuring agreements:

**A.     Coverage A – Excess Follow Form Liability Insurance**

**1.**     Under Coverage A, we will pay on behalf of the "insured" that part of "loss" covered by this insurance in excess of the total applicable limits of "underlying insurance", provided the injury or offense takes place during the Policy Period of this policy.  The terms and conditions of "underlying insurance" are, with respect to Coverage A, made a part of this policy except with respect to:

**a.**     any contrary provision contained in this policy; or

**b.**     any provision in this policy for which a similar provision is not contained in "underlying insurance"

* * *

**4.**     Notwithstanding anything to the contrary contained above, if "underlying insurance" does not cover "loss" for reasons other than exhaustion of an aggregate limit of insurance by payment of claims, then we will not cover such "loss".

**5.**     We have no obligation under this insurance with respect to any claim or "suit" settled without our consent.

* * *

**B.     Coverage B – Umbrella Liability Insurance**

1051605\310970075.v3

    **1.**    Under Coverage B, we will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay by reason of liability imposed by law because of "bodily injury", "property damage", or "personal and advertising injury" covered by this insurance which takes place during the Policy Period and is caused by an "occurrence". We will pay such damages in excess of the Retained Limit Aggregate specified in the Declarations or the amount payable by "other insurance", whichever is greater.

* * *

    **5.**    Coverage B will not apply to any loss, claim or "suit" for which insurance is afforded under "underlying insurance" or would have been afforded except for the exhaustion of the limits of insurance of "underlying insurance",

* * *

**Exhibit B**, at ALLIED 00085; ALLIED 000189; and ALLIED 000293.

46.    The umbrella coverage forms provide, in pertinent part, the following defense provisions:

**Applicable to Coverage A and Coverage B**

**A.**    We have the right and the duty to assume control of the investigation, settlement or defense of any claim or "suit" against the "insured" for damages covered by this policy:

    **1.**    under Coverage A, when the applicable limit of "underlying insurance" has been exhausted by payment of claims; or

    **2.**    under Coverage B, when damages are sought for "bodily injury", "property damage", or "personal and advertising injury" to which no "underlying insurance" or other insurance applies.

* * *

**C.**    In those circumstances where paragraph A. above does not apply we do not have the duty to assume control of the investigation, settlement or defense of any claim or "suit" against the insured. We do, however, have the right to participate in the investigation, settlement or defense of any claim or "suit" that we feel may create

liability on our part under the terms of this policy.  If we exercise this right, we will do so at our expense.

* * *

**Exhibit B**, at ALLIED 00086; ALLIED 000190; and ALLIED 000294.

47.    The umbrella coverage forms provide, in pertinent part, the following definitions:

**DEFINITIONS**

**A.    Applicable to Coverage A and Coverage B**

As used in Coverage A and Coverage B:

* * *

**3.**    "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**4.**    "Loss" means those sums actually paid in the settlement or satisfaction of a claim which the "insured" is legally obligated to pay as damages because of injury or offense, after making proper deductions for all recoveries and salvage.

* * *

**6.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**7.**    "Other insurance" means a policy of insurance affording coverage that this policy also affords. "Other insurance" includes any type of self-insurance or other mechanism by which an "insured" arranges for funding of legal liabilities.

"Other insurance" does not include "underlying insurance" or a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

* * *

17

13.    "Underlying insurance" means the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy, including any type of self-insurance or alternative method by which the "insured" arranges for funding of legal liabilities that affords coverage that this policy covers.

"Underlying insurance" does not include any Extended Reporting Periods on the policies shown in the Declarations. Extended Reporting Periods must be endorsed onto this policy by us.

\* \* \*

**B.    Applicable to Coverage A Only**

As used in Coverage A:

1.    "Injury or damage" means any injury or damage covered in the applicable "underlying insurance" arising from an "occurrence".

\* \* \*

**C.    Applicable to Coverage B Only**

As used in Coverage B:

\* \* \*

2.    "Bodily injury" means physical injury, sickness or disease to a person and, if arising out of the foregoing, mental anguish, mental injury, shock or humiliation, including death at any time resulting therefrom.

\* \* \*

**Exhibit B**, at ALLIED 000095-99; ALLIED 000199-203; and ALLIED 000303-307.

48.    The umbrella coverage forms provide, in pertinent part, the following exclusions:

**Exclusions**

\* \* \*

**C.    Applicable to Coverage B Only**

Under Coverage B, this insurance does not apply to:

* * *

**9.**    Fungi Or Bacteria

**a.**    Injury or damage", "bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such "injury" or damage", "bodily injury", "property damage", or "personal and advertising injury".

**b.**    Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

* * *

**Exhibit B**, at ALLIED 000088-89; ALLIED 00192-193; and ALLIED 000296-297.

**III.    This Coverage Dispute**

49.    CC Borden has tendered the Complaint in the Underlying Action to Allied for a defense as a purported additional insured under the Policies.

50.    Allied is currently defending CC Borden in the Underlying Action subject to a complete reservation of rights.

19

51.    Allied disputes that CC Borden is an additional insured under the Policies for the claims asserted against it in the Complaint, pursuant to the Policies terms, conditions, endorsements, and exclusions.

52.    Accordingly, an actual controversy exists between Allied and CC Borden regarding whether Allied has a duty to defend CC Borden in the Underlying Action for the claims against it by the Claimants.

53.    All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived.

## COUNT I – DECLARATORY JUDGMENT REGARDING THE POLICIES' FUNGI OR BACTERIA EXCLUSIONS

54.    Allied realleges and incorporates by reference its allegations in paragraphs 1 through 53 above.

55.    An actual, present and existing controversy has arisen between the parties as to Allied's obligations, if any, with respect to the Underlying Action.

56.    Allied seeks a judicial declaration of no duty to defend CC Borden, and therefore no duty to indemnify CC Borden, on the grounds that the allegations in the Complaint are not covered by Policies and are excluded from coverage based upon the Policies' Fungi or Bacteria exclusions.

57.    Based upon the Policies' Fungi or Bacteria exclusions, Allied has no obligation under the Policies to retain counsel to defend CC Borden in the Underlying Action.

58.    There is a bona fide, actual, present need for the declaration of Allied's rights and obligations under the Policies, if any.

59.    This Court's declaration will confer certainty on the parties with respect to their rights, duties and obligations under the Policies and will, therefore, serve the interests of justice.

60.    Allied has no adequate remedy at law.

WHEREFORE, for the reasons stated above, Allied respectfully requests that this Court enter a Declaratory Judgment declaring the rights, status, obligations and duties of the parties under Policies based upon the Fungi or Bacteria exclusions, including, but not limited to, the following:

A.    That Allied has no duty to defend CC Borden against the Complaint, and, there being no duty to defend, therefore no duty to indemnify CC Borden;

B.    That Allied has no duty to pay for the attorney's fees and costs expended in the defense of CC Borden for the Complaint; and

C.    That Allied be awarded any such further relief in law or in equity to which it may be entitled.

## COUNT II - DECLARATORY JUDGMENT THAT CC BORDEN IS NOT AN ADDITIONAL INSURED FOR THE COMPLAINT

61.    Allied realleges and incorporates by reference its allegations in paragraphs 1 through 53 above.

62.     An actual, present and existing controversy has arisen between the parties as to Allied's obligations, if any, with respect to the claims being asserted against CC Borden by the Claimants in the Underlying Action.

63.     Allied seeks a judicial declaration of no duty to defend CC Borden, and therefore no duty to indemnify, on the grounds that the allegations in the Complaint do not render CC Borden an additional insured under the Policies.

64.     Based upon the Policies' applicable endorsements extending coverage to additional insureds per the language of those endorsements, Allied has no obligation under the Policies to retain counsel to defend CC Borden in the Underlying Action.

65.     There is a bona fide, actual, present need for the declaration of Allied's rights and obligations under the Policies, if any.

66.     This Court's declaration will confer certainty on the parties with respect to their rights, duties and obligations under the Policies and will, therefore, serve the interests of justice.

67.     Allied has no adequate remedy at law.

WHEREFORE, for the reasons stated above, Allied requests that this Court enter a Declaratory Judgment declaring the rights, status, obligations and duties of the parties under the Policies based upon the Policies' applicable additional insured endorsements, including, but not limited to, the following:

A.      That Allied has no duty to defend CC Borden against the Complaint, and, there being no duty to defend, therefore no duty to indemnify  CC Borden;

1051605\310970075.v3

B.      That Allied has no duty to pay for the attorney's fees and costs expended in the defense of CC Borden for the Complaint; and

C.      That Allied be awarded any such further relief in law or in equity to which it may be entitled.

### COUNT III - DECLARATORY JUDGMENT REGARDING THE DUTY TO INDEMNIFY

68.     Allied realleges and incorporates by reference its allegations in paragraphs 1 through 53 above.

69.     An actual, present and existing controversy has arisen between the parties as to Allied's indemnity obligations, if any, with respect to the claims being asserted against CC Borden by the Claimants in the Underlying Action.

70.     To the extent that a duty to defend CC Borden exists under the Policies, which it does not, Allied seeks a judicial declaration that the Policies' "Endorsement – Two or More Coverage Forms or Policies Issued by Us" endorsement applies and limits its obligation to pay.

71.     To the extent that Allied has a duty to defend CC Borden, which it does not, there is a bona fide, actual need for the declaration of Allied's rights and obligations under the Policies, as to whether "Endorsement – Two or More Coverage Forms or Policies Issued by Us"  applies and limits Allied's duties if any, to indemnify CC Borden upon resolution of the Claimants' claims against CC Borden.

1051605\310970075.v3

72.     This Court's declaration will confer certainty on the parties with respect to their rights, duties and obligations under the Policies and will, therefore, serve the interests of justice.

73.     Allied has no adequate remedy at law.

WHEREFORE, for the reasons stated above, Allied requests that this Court enter a Declaratory Judgment declaring the rights, status, obligations and duties of the parties under the Policies based upon the Policies' "Endorsement – Two or More Coverage Forms or Policies Issued by Us," including, but not limited to, the following:

A.     That the "Endorsement – Two or More Coverage Forms or Policies Issued by Us" applies and if Allied has a duty to indemnify CC Borden against the Complaint, that this endorsement limits it duty to pay; and

B.     That Allied be awarded any such further relief in law or in equity to which it may be entitled.

Dated:  October 3, 2022          Respectfully submitted,

/s/ Logan G. Haine-Roberts
Ronald L. Kammer
Florida Bar No. 360589
rkammer@hinshawlaw.com
Logan G. Haine-Roberts
Florida Bar No. 112005
loganhaine-roberts@hinshawlaw.com
lleon@hinshawlaw.com
HINSHAW & CULBERTSON LLP
2525 Ponce de Leon Boulevard, Fourth Floor
Coral Gables, Florida 33134-6044
(T): 305-358-7747 – (F): 305-577-1063
*Counsel for Allied Property & Casualty Insurance Company*

1051605\310970075.v3